**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MEEKELIA ALEXANDER,
    Plaintiff,

        v.               No. 25-cv-10983-DLC

COMPASS GROUP USA INC.,
       Defendant.

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS**

CABELL, U.S.M.J.

## I. INTRODUCTION

Plaintiff Meekelia Alexander, an African American, worked as a café manager of various dining halls at the Massachusetts Institute of Technology ("MIT"). She asserts that her former employer, defendant Compass Group USA Inc., failed to transfer her to MIT's New Vassar dining hall ("New Vassar") as promised and paid her less than white café managers because of her race. Thereafter, the defendant constructively discharged her or so she contends.

The complaint sets out three race discrimination claims all brought under 42 U.S.C. § 1981 ("section 1981"): (1) a failure to promote the plaintiff to café manager of New Vassar ("first claim"); (2) disparate pay; and (3) constructive discharge. The defendant moves to dismiss the first two claims on statute of

limitations grounds under Federal Rule of Civil Procedure 12(b)(1).[1]  It seeks to dismiss the constructive discharge claim under Rule 12(b)(6).  (D. 16).  For the reasons explained below, the court will deny the motion.

## II.   **LEGAL STANDARD**

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" even if actual proof of the facts is improbable.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016).  The "standard is not akin to a probability requirement," but it" requires "more than a sheer possibility that a defendant has acted unlawfully."  *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (citations and internal quotation marks omitted).  In order for a party to "survive a motion to dismiss, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *In re ARIAD Pharms. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).  Reasonable

---

[1] Because the statute of limitations in section 1981 is not jurisdictional, the Rule 12(b)(1) motion is properly treated as a Federal Rule of Civil Procedure 12(b)(6) motion.  *See K.O. by and through E.O. v. United States*, 651 F. Supp. 3d 331, 342 (D. Mass. 2023) (stating defendant moves to dismiss claims as untimely under Rule 12(b)(1) but motion "should be treated as a 12(b)(6) motion because the statute of limitations in the FTCA is not jurisdictional.") (citing *Morales-Melecio v. United States*, 890 F.3d 361, 367 (1st Cir. 2018)); *Samuel v. Ports Am. Chesapeake, LLC*, Civil Action No. DKC 19-0400, 2020 WL 4748542, at *6 (D. Md. Aug. 17, 2020) ("[T]he fact that the statute of limitations may have expired on [a] § 1981 claim is a defense to the claim . . . and not a jurisdictional defect.") (citation omitted).

inferences from the facts alleged in the complaint are drawn in the plaintiff's favor.  *Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 649 (1st Cir. 2026) (citation omitted).

III.  **THE PARTIES' ARGUMENTS**

The defendant argues that the first claim is a failure to hire claim and, contrary to the plaintiff's position, not a failure to transfer claim.[2]  As such, it is subject to a three-year limitations period and therefore time barred, according to the defendants.  (D. 17, 33).  Next, the defendant asserts that the disparate pay claim is subject to a three-year limitations period and, even if subject to a four-year period, is untimely.  (D. 17, 33).  The constructive discharge claim, the defendant maintains, is deficient because the facts fail to show:  (1) causation given the attenuated timing between the alleged discriminatory acts and the purported constructive discharge; (2) a hostile work environment, specifically, that the plaintiff's work environment was "so pervaded by racial harassment as to alter the terms and conditions of her employment"; and (3) a constructive discharge, namely, that the plaintiff's working conditions were so unpleasant

---

[2] The defendant does not characterize or address the first claim as a failure to promote the plaintiff.  As discussed infra, the complaint pleads a failure to promote claim.

that a reasonable person would have been compelled to resign.  (D. 17, 33).

The plaintiff counters that she pled a failure to transfer claim rather than a failure to hire claim.[3]  In that regard, she submits that a four-year limitations period applies and renders the claim timely.  She similarly contends that her disparate pay claim carries a four-year limitations period.  Anent the constructive discharge claim, the plaintiff identifies the following facts as sufficient to avoid dismissal:  (1) the defendant's refusal to transfer her to New Vassar; (2) her learning that the defendant hired two white café managers for the New Vassar position; and (3) the defendant paying the plaintiff less than white café managers for the same work.

## IV.  <u>BACKGROUND</u>

MIT has five dining halls, and each is staffed by a café manager.  The plaintiff began working in MIT's dining halls in 2002.  (D. 1, ¶¶ 5, 8).  Throughout her tenure, she "performed her job well."  (D. 1, ¶ 12).  Afterall, she had more than twenty-one years of experience in the food service industry including more than thirteen years as a café manager.  (D. 1, ¶ 20).  During the last seven years of her employment at MIT, she was a café manager

---

[3] Like the defendant, the plaintiff eschews pleading a failure to promote section 1981 claim.  (D. 30, plaintiff's opposition stating, "Although Plaintiff did state the word promote in paragraph 26 of the complaint this was not a promotion but a transfer . . . [T]his case is not a failure to promote case but a failure to transfer case.").

and had an employment contract with the defendant.  (D. 1, ¶¶ 5, 10-11).

In January 2020, the defendant asked her to be the café manager of the Maseeh Hall dining hall ("Maseeh Hall"), MIT's largest dining hall.  (D. 1, ¶ 16).  In that regard, Maseeh Hall needed a strong manager to bring the hall "up to standards".  (D. 1, ¶¶ 16-17).  The plaintiff and the defendant agreed that the defendant would appoint the plaintiff café manager of New Vassar when she accomplished getting Maseeh Hall up to standards.[4]  (D. 1, ¶ 17).

The plaintiff succeeded in the task.  Indeed, in only one week's time, she brought Maseeh Hall up to standards.  The defendant was pleased with her efforts.

In January 2021, and despite the plaintiff's success, the defendant did not appoint her café manager of New Vassar.  Further, during this time, the defendant hired two white individuals as café managers and appointed one of them café manager of New Vassar.[5]

---

[4] Under a Rule 12(b)(6) standard, the above constitutes a contract.  The court takes no position as to whether the agreement was a contract on a more developed record.  The parties do not explicitly address the matter.

[5] The complaint does not unequivocally state that the defendant appointed one of these two white individuals as café manager of New Vassar.  The complaint reasonably infers this fact from the following allegations:

> In January of 2021, . . . [Plaintiff] did not get the New Vassar position . . . During this time . . . there [were] two white people hired for the positions as Café Managers . . . .

(D. 1, ¶¶ 18-19).

The plaintiff subsequently discovered this hiring.  (D. 1, ¶ 19) ("Plaintiff found out later that" the defendant hired two white café managers.).  She also knew that, unlike her, these individuals did not have twenty-one years of "experience in the food service industry" and thirteen years of experience as a café manager.  (D. 6, ¶ 20).

In addition, the defendant paid the plaintiff substantially less than other white café managers.  Moreover, she had "the same, if not more, responsibilities" than white café managers.  (D. 6, ¶ 14).

In March 2021, the plaintiff took a medical leave precipitated by these conditions at work.  By this time, she was experiencing a considerable amount of stress, anxiety, and depression.  At some point thereafter, the defendant "officially terminated" her employment.  (D. 1, ¶ 23).

On January 3, 2025, the plaintiff filed this action in state court.  The defendant thereafter removed the case to this court. For statute of limitations purposes, the plaintiff filed this action on January 3, 2025 notwithstanding the subsequent removal. *See McElrath v. City of Cleveland*, Case No. 1:19-CV-00332, 2019 WL 6170564, at *1 & *4 n.35 (N.D. Ohio Nov. 20, 2019) (using date filed in state court as filing date to assess limitations period in removed action).

## V.  DISCUSSION

## A.  UNTIMELINESS

As noted, the defendant maintains that the section 1981 failure to hire claim is subject to a three-year limitations period and therefore untimely.  The defendant similarly submits that the disparate pay claim is untimely because it also carries a three-year limitations period.  The plaintiff, in turn, characterizes the failure to hire claim as a failure to transfer claim and therefore subject to a four-year limitations period.[6]  The disparate pay claim, the plaintiff contends, is likewise subject to a four-year limitations period.  Further, per the plaintiff, the disparate pay claim survives for each paycheck received after January 3, 2021, and is barred for each paycheck issued before January 3, 2021.  (D. 30) (plaintiff's opposition stating, "Defendant's Motion to dismiss should be granted for paychecks issued prior to January 3, 2021, and denied for paychecks issued after January 3, 2021.").

## 1.  TIMELINESS OF FIRST CLAIM

The initial issue is whether the first claim constitutes a failure to hire, promote, or transfer claim.  Once properly construed as raising a failure to promote claim, the issue reduces

---

[6] A section 1981 failure to transfer claim carries a four-year limitations period.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004).

7

to what limitations period applies to such a claim.  The court addresses these two issues seriatim.

a.  <u>**FAILURE TO HIRE, PROMOTE, OR TRANSFER CLAIM**</u>

The structure and substance of a complaint govern the analysis of whether the complaint raises a claim.  *Cortés-Rivera v. Dep't of Corrs. and Rehab. of Commonwealth of Puerto Rico*, 626 F.3d 21, 28 (1st Cir. 2010) (examining "plain language" of complaint and its structure to determine if it raised a claim); *accord Clapp v. Fanning*, Civil Action No. 18-cv-10426-ADB, 2022 WL 827404, at *6 (D. Mass. Mar. 18, 2022) (citing *Cortés-Rivera*, 626 F.3d at 28).

Here, the plain language and structure of the complaint plead a failure to promote claim.  To explain, the structure of the complaint sets out the factual allegations in one section of the complaint.  (D. 1, ¶¶ 8-24).  The next section of the complaint lists the causes of action and is aptly titled "Cause of Action[,] Section 1981."  (D. 1, ¶¶ 25-27).  More precisely, paragraph twenty-six in this section lists the three causes of action.  The plain language of that paragraph identifies one of the causes of action as being "denied an opportunity for a *promotion*."  (D. 1, ¶ 26) (emphasis added).

The defendant nevertheless submits that the complaint pleads a failure to hire claim.  (D. 17, pp. 3-4) (D. 33).  It does not. Nowhere does the complaint use the word "hire" or any version of that word, such as "hiring."  Further, the factual assertions in

the complaint do not support the construction.   Of note, the plaintiff was already working for the defendant as a café manager when "she did not get" the promotion to be café manager of New Vassar.   (D. 1, ¶¶ 11, 18, 26).   As such, she was not "hired" to a position she already occupied (café manager), notwithstanding the different dining hall.

The plaintiff, in turn, denotes the first claim as a failure to transfer.   (D. 30, pp. 2-3) (opposition brief asserting she pled a failure to transfer claim).   The characterization fails to persuade.   First and foremost, the plaintiff's "subsequent references to [the] purported" claim in her opposition brief do not change the complaint as pled.   *Cortés-Rivera,* 626 F.3d at 28 (Cortés-Rivera "cannot raise a federal retaliation claim if that claim was not present in his complaint" and "[h]is subsequent references to a purported . . . claim do not alter this result."). Second, the paragraph in the complaint that lists the causes of action identifies the denial of "a promotion" rather than a denial of a transfer.   (D. 1, ¶ 26).   Third, the complaint does not refer to a "transfer" or another form of that word.[7]

To be sure, the plaintiff quotes various paragraphs in the complaint as raising a failure to transfer claim.   (D. 30, p. 2). These paragraphs, however, simply depict the parties' agreement to

---

[7] It is therefore not necessary to address the defendant's argument that the failure to transfer claim does not withstand dismissal because the facts fail to show that the plaintiff suffered an impairment to her employment contract.

appoint the plaintiff café manager of New Vassar once she brought Maseeh Hall up to standards.  They also set out the plaintiff's failure to get the New Vassar position and the hiring of the two individuals for café manager positions.  Against the backdrop of the impactful reasons in the preceding paragraph, the paragraphs cited by the plaintiff lack force.  Accordingly, they do not raise a failure to transfer claim.

b.  **<u>FAILURE TO PROMOTE CLAIM</u>**

A multifaceted analysis applies to determining the correct limitations period of a section 1981 failure to promote claim.  To begin, section 1981 does not contain its own statute of limitations.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Borrowing the analogous statute of limitations in the forum state, however, does not necessarily apply.  Rather, a four-year limitations period applies to "civil action[s] arising under an Act of Congress enacted after the" December 1, 1990 enactment of 28 U.S.C. § 1658 ("section 1658").  28 U.S.C. § 1658.

Interpreting section 1658, the Court in *Jones* held that a "cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."  *Jones*, U.S. at 382.  In that regard, section 1981 was amended in 1991 ("the 1991 amendment") to include post-contract-formation

10

discriminatory conduct.    *Jones*, 541 U.S. at 372, 382-383; *see*
*Mercado v. Puerto Rico*, 814 F.3d 581, 586 (1st Cir. 2016) (1991
amendment "'enlarged the category of conduct that [was previously]
subject to section 1981 liability' to include post-contract-
formation discriminatory conduct . . . .") (quoting *Jones*, 514
U.S. at 383).

Notably, prior to December 1990 the Court decided *Patterson*
*v. McLean Credit Union*, 491 U.S. 164 (1989), which ruled that "§
1981 'did not protect against conduct that occurred after the
formation of the contract.'"[8]    *Mercado*, 814 F.3d at 586 (quoting
*Jones*, 541 U.S. at 372-373, citing *Patterson*, 491 U.S. 164); *see*
*Andrews v. Freemantlemedia N.A., Inc.*, No. 13 Civ. 5174(NRB), 2014
WL 6686590, at *5 (S.D.N.Y. Nov. 19, 2014) (*Patterson* "held that
Section 1981's provision for the right to 'make and enforce
contracts' covered only conduct at the initial formation of the
contract and conduct impairing the contract's enforcement through

---

[8] At that time, section 1981 read "that 'all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to *make and enforce contracts* . . . as is enjoyed by white citizens.'" *Jones*, 541 U.S. at 372 (quoting pre-1990 version of 1981) (emphasis added). The 1991 amendment added a subsection that defined the term "make and enforce contracts."  It reads as follows:

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b).

legal process."). Further, the *Jones*' plaintiffs' section 1981 hostile work environment, wrongful termination, and *failure to transfer* claims were not actionable by virtue of *Patterson* because, as noted, that case "did not protect against . . . conduct that occurred after the formation of the contract." *Jones*, 541 U.S. at 372-373 (citing *Patterson*, 491 U.S. 164). As a result, those "claims 'were made possible by' the 1991 amendment to section 1981, as their suit to recover for defendants' post-contract formation conduct could succeed only by virtue of that amendment and thus 'necessarily depend[ed]' on it." *Mercado*, 814 F.3d at 586 (quoting *Jones*, 541 U.S. at 383).

Importantly, *Patterson* also addressed a section 1981 failure to promote claim. *See Patterson*, 491 U.S. at 185. Under *Patterson*, a failure to promote claim is actionable under section 1981 "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer . . . ." *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984)). In other words, a section 1981 failure to promote claim existed prior to the December 1990 enactment of section 1658 when "the promotion [rose] to the level of an opportunity for a new and distinct relation." *Dunston v. Gray Television, Inc.*, Civil Action File No. 1:21-CV-05032-MLB-JEM, 2024 WL 4224176, at *13 (N.D. Ga. Apr. 30, 2024) (addressing failure to promote claim) (citing case citing *Patterson*, 491 U.S.

12

at 185).   The case example in *Patterson* of a new and distinct relation was refusing to promote an associate at a law firm to a partner.   *Patterson*, 491 U.S. at 185-186 (citing *Hishon*, 467 U.S. 69 (1984)).

Unlike the refusal to promote an associate to the level of a partner in *Hishon*, the defendant refused to promote the plaintiff from one café manager to another café manager, albeit from one dining hall to another.   This is not the kind of denied promotion that was actionable under *Patterson*.   *See Harrison v. Assocs. Corp. of North Am. N.*, 917 F.2d 195, 196 (5th Cir. 1990) (change from "C.R.T. operator" to "lead C.R.T. operator" did not result in "new and distinct relationship"); *Thompson v. Hendrickson USA, LLC*, No. 3:20-cv-00482, 2021 WL 848694, at *12 (M.D. Tenn. Mar. 5, 2021) (noting that "'mere advancement' or otherwise minor transfer between one management position and another is not the type of significant contractual change that the pre-1991 version of § 1981 anticipated") (discussing *Aaron Malone v. State of Tenn.*, No. 03-2869 B, 2005 WL 2671343, at *6 (W.D. Tenn. Oct. 19, 2005)).

The promotion claim was therefore made possible under the 1991 amendment which, as noted, carries a four-year statute of limitations.   Indeed, caselaw in this circuit firmly supports this conclusion.   *See Buntin v. City of Boston*, 813 F.3d 401, 404-405 (1st Cir. 2015) (finding section 1981 claim, which "allege[d] the Defendants discriminatorily terminated" the plaintiff, "was

13

brought within the applicable four-year statute of limitations")
(citing *Jones*, 541 U.S. at 382); *accord Garmon v. Nat'l R.R.
Passenger Corp.*, 844 F.3d 307, 318 n.8 (1st Cir. 2016) (citing
*Buntin*, 813 F.3d at 404-405, and stating "Section 1981
discrimination claims are subject to a four-year statute of
limitations").    Moreover, the facts reflect ongoing, post-
contract-formation conduct.  As stated in the complaint, in January
2020, the parties agreed to promote the plaintiff to the New Vassar
position once she accomplished getting Maseeh Hall up to standards.
A year later in January 2021, and despite her "performance at
Maseeh Hall, she did not get the New Vassar position."  (D. 6, ¶
18).

In sum, the failure to promote claim is subject to a four-
year limitations period.  Hence, the motion to dismiss the claim
as untimely lacks force.

2.  **TIMELINESS OF DISPARATE PAY CLAIM**

The disparate pay claim alleges that the defendant paid the
plaintiff "substantially less than similarly situated white café
managers."  (D. 1, ¶ 26).  Relatedly, as stated in the complaint,
the plaintiff had "the same, if not more, responsibilities" than
"white café managers."  (D. 1, ¶ 14).  She also "performed her job
well" during her employment with the defendant.  (D. 1, ¶ 12).
Lastly, she had an employment contract with the defendant and,

14

construing the complaint in the plaintiff's favor, the employment contract included her pay.  (D. 1, ¶¶ 5-6, 14).

Of note, "discriminatory pay raises, cuts, or other modifications involve post-contract formation conduct that was not actionable under Section 1981 until the 1991 amendment."  *Barr v. Bd. of Regents of Univ. Sys. of Ga.*, Civil Action No. 4:17-cv-203, 2019 WL 1099791, at *8 (S.D. Ga. Mar. 8, 2019).  Claims based on such "acts are [therefore] subject to the four-year statute of limitations" in section 1658.  *Id.; see Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) ("[D]isparate treatment in terms of compensation" was "subject to § 1658's 4-year statute of limitations because" conduct "took place after the formation of [plaintiff's] employment contract.")  (citations omitted); *see also Garmon*, 844 F.3d 318 n.8 (citing *Buntin*, 813 F.3d at 404-405).[9]

Here, the foregoing allegations reflect that the defendant paid the plaintiff less than her white counterparts on an ongoing basis after the parties entered into the employment contract.  Given this post-contract formation conduct, the four-year statute of limitations in section 1658 applies.  Concomitantly, the

---

[9] The parties dispute the findings made by the court in *Lewis v. City of Shreveport*, Civil Action No. 16-11152018, 2028 WL 752362 (W.D. La. Feb. 7, 2018).  (D. 30, p. 4) (D. 33, p. 3). Regardless, *Lewis* does not warrant applying a different limitations period.  *See Lewis*, 2018 WL 752362, at *10 ("Section 1981 claims for racially motivated disparities in pay are subject to a four-year statute of limitations.") (citing case citing section 1658 and *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291-292 (4th Cir. 2004)).

plaintiff's position that the disparate pay claim is viable "for each paycheck [the plaintiff] received after January 3, 2021" is correct.

As a final matter, the defendant's argument that the disparate pay claim is untimely even if a four-year limitations period applies is misguided.  The defendant cites *Rodriguez-Garcia v. Mun. of Caguas*, 354 F.3d 91 (1st Cir. 2004), as the basis for the argument.  As stated therein, "Under federal law, the limitations period begins to run when the plaintiff 'knows or has reason to know of the injury which is the basis for his claim.'"  *Id*. at 354 F.3d 96–97 (citation omitted).  The defendant asserts that the plaintiff knew about the pay disparity before the 2020 transfer to Maseeh Hall.  In fact, the defendant asserts that the disparate pay claim accrued in 2014 because the plaintiff began to work as a café manager at that time.

The facts do not intimate when the plaintiff knew or had reason to know about the wages of her white counterparts.  To be sure, the plaintiff filed the complaint on January 3, 2025 and therefore knew at that time she was paid substantially lower wages. (D. 1, ¶ 14) (complaint stating "Plaintiff was paid substantially less in wages [than] her similarly situated white" café managers.). She also knew the amount she was paid as a café manager for the seven years prior to filing the complaint.  But, construing the facts in the plaintiff's favor, she did not know or have reason to

16

know that white café managers were paid substantially higher wages until she filed the complaint or shortly before that date.

Per the above, the motion to dismiss the disparate pay claim as untimely fails to persuade.

B.  **CONSTRUCTIVE DISCHARGE CLAIM**

As noted, the defendant seeks to dismiss the constructive discharge claim on multiples fronts:  (1) the attenuated timing between the purported discriminatory acts and the alleged constructive discharge fails to show causation; (2) a hostile work environment is lacking because it was not "so pervaded by racial harassment" such that it altered the terms and conditions of the plaintiff's employment; and (3) the absence of a constructive discharge because the working conditions were not so unpleasant that a reasonable person would have been compelled to resign. After setting out the elements of a race discrimination section 1981 hostile work environment claim, the court addresses the defendants' arguments in numerical order.

To begin, "[t]he elements of a hostile racial environment claim under section 1981" require the plaintiff to

> establish:  (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that *the harassment was based on her race*; (4) that *the harassment was sufficiently severe or pervasive so as to alter the terms or conditions of her employment*; (5) that the conduct complained of was both objectively and subjectively offensive; and (6) that some basis for employer liability has been established.

17

*Bhatti v. Tr. of Boston Univ.*, Civil Action No. 08-11343-RGS, 2010 WL 4068732, at *8 (D. Mass. Oct. 19, 2010) (citing *Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008)) (emphasis added).

1. **CAUSATION**

The defendant submits that a matter of months is insufficient to show causation.   In that regard, the defendant relies on *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 17 (1st Cir. 2025) ("doubt[ing] that the three-or four-month period between the two events would suffice to establish the causal link required for even a prima facie showing of retaliation") (citation omitted).[10] The defendant postulates that several months passed between the purported discriminatory acts (the January 2021 denied promotion) and the purported constructive discharge (the March 2021 medical leave).[11]   Construing the complaint in the plaintiff's favor, the "January 2021" denial took place at the end of the month.   By like token, the "March 2021" leave of absence took place at the beginning of the month.   The complaint therefore plausibly alleges

---

[10] Whereas *Qintana-Dieppa* involved a race discrimination claim in violation of Title VII, 42 U.S.C. § 2000e, Title VII cases alleging hostile work environment claims are germane to section 1981 cases alleging hostile racial discrimination claims.   *See Bhatti*, 2010 WL 4068732, at *8 ("The elements of a hostile racial environment claim under Section 1981 are identical to those under Title VII."); *Thomas v. Cook Children's Health Care Sys.*, Civil Action No. 4:20-CV-01272, 2021 WL 4796679, at *9 (N.D. Tex. July 28, 2021) ("To state a claim for hostile work environment under Title VII, Plaintiff must show the same elements required of a Section 1981 claim.").

[11] The defendant does not expressly identify the January 2021 denied promotion and the March 2021 medical leave as the respective alleged discriminatory act and purported constructive discharge.   The three-month period between these two events, however, comports with the defendant's argument that a three or four month time frame is too attenuated to support causation.

that only one month transpired before the March 2021 constructive discharge.  This plaintiff-favorable reasonable construction of the complaint jettisons the defendant's attenuated timing argument.

## 2.  <u>HOSTILE WORK ENVIRONMENT</u>

Anent the defendant's second argument, establishing "a claim of 'hostile work environment'" requires a plaintiff to "demonstrate 'that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment.'"  *Lima v. City of East Providence*, 17 F.4th 202, 205, 208 (1st Cir. 2021) (addressing section 1981 hostile work environment claim) (citations omitted).  This standard "must be both objectively and subjectively offensive."  *Rosario v. Dept. of Army*, 607 F.3d 241, 246 (1st Cir. 2010) (citation omitted).  The defendant's argument implicates the objectively offensive component.  As to this component, the environment must be "one that a reasonable person would find hostile or abusive."  *Id.* (addressing hostile work environment based on sexual harassment) (citation omitted); *see Eswarappa v. Comty. Action Inc./Head Start*, Civil No. 14-14255-FDS, 2017 WL 3202724, at *8 (D. Mass. July 7, 2017) ("Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment" (citing

19

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002)).

Whether a reasonable person would perceive the environment as hostile or abusive involves examining "all the attendant circumstances." *Rosario*, 607 F.3d at 246 (citations omitted). Those circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted); *see González-Santos v. Torres-Maldonado*, Civil No. 09-1850 (FAB/BJM), 2012 WL 13170504, at *12 (D.P.R. Jan. 20, 2012) ("listing [these] factors in hostile environment race discrimination" claim) (citation omitted). "'Subject to some policing at the outer bounds,' it is for the jury to weigh [these] factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." *Gorski v. N.H. Dep't of Corrs.*, 290 F.3d 466, 474 (1st Cir. 2002); *accord Rosario*, 607 F.3d at 247 (same).

Here, the alleged conduct was sufficiently severe or pervasive such that a reasonable café manager would perceive the environment as hostile or abusive. To explain, experiencing substantially less pay than similar white café managers occurred with every paycheck and was therefore frequent. It also took place

20

for a prolonged time-period.  In addition, the circumstances included the plaintiff taking on more responsibility by getting the largest dining hall up to standards and then being denied a promised promotion to another dining hall.  The defendant then awarded the position to a white café manager.  Thus, the alleged discrimination in being denied the promotion coupled with the allegedly prolonged discrimination of being paid substantially less than similar white café managers can be readily viewed as frequent and severe.  Plausibly, it would unreasonably interfere with a reasonable café manager's work.  Whereas there were no physically threatening or humiliating comments, the circumstances as a whole sufficiently satisfy the objectively offensive component of a section 1981 hostile work environment to avoid a Rule 12(b)(6) dismissal.

## 3.  <u>CONSTRUCTIVE DISCHARGE</u>

Turning to the defendants' third ground for dismissal, "[a]n employee's resignation morphs into a constructive discharge when 'the working conditions become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.'"  *Walsh v. HNTB Corp.*, 2026 WL 710036, at *8, __ F.4th __, (1st Cir. Mar. 13, 2026) (citation and ellipses omitted).  The standard is rigorous such that an employee "must endure the 'ordinary slings and arrows that workers routinely encounter in a hard, cold world.'"  *Id.* (citation omitted).  The

21

perspective of the reasonable person is viewed in the context of the plaintiff's position or, stated otherwise, in the plaintiff's shoes. *See Morris v. Schroder Cap. Mgmt. Intern.*, 481 F.3d 86, 89 (2d Cir. 2007) (stating that plaintiff "failed to plead that the working conditions at his former place of employment were 'so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.'").

The defendant's argument is brief and consists of two points. Examining each point, the defendant first asserts that the factual allegations are based solely on the plaintiff's subjective beliefs and conjecture.  (D. 33, p. 5).  The legal principle is correct. *See Walsh,* 2026 WL 710036, at *8 ("Walsh's allegations depend more on her 'subjective beliefs' than objective facts and thus cannot form the basis of her constructive discharge."); *id.* ("[S]tandard is based on objective reasonableness.").

The objective facts, however, include paying the plaintiff substantially less in wages than white café managers over time and in the months immediately prior to the purported March 2021 constructive discharge.  Then, one month before the purported March 2021 constructive discharge, the defendant denied the promotion. Given these objective facts, the defendant's assertion that the plaintiff relies only on her subjective beliefs is misplaced.

Second, the defendant contends there is only a bald assertion that the plaintiff was constructively discharged at an

unidentified time after the March 2021 medical leave.  (D. 17, pp. 6-7).  This misreads the complaint.  The plaintiff was *officially terminated* at some point after the purported March 2021 constructive discharge.  (D. 1, ¶ 23).  She was allegedly constructively discharged in March 2021 when "[she] *had* to go out on medical leave" given the working conditions at issue.  (D. 1, ¶ 23) (emphasis added).

In sum, having rejected the defendant's two points, both of them brief, there is a plausible showing of a constructive discharge.

## VI.   CONCLUSION

In accordance with the foregoing, the motion to dismiss (D. 16) is **DENIED**.

> /s/ Donald L. Cabell
> DONALD L. CABELL, U.S.M.J.

DATED:  March 26, 2026